IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01641-CNS

LUIS ENRIGUE PEREZ SERRANO,

      Petitioner,

v.

ROBERT HAGAN, Field Office Director of Enforcement and Removal Operations,
Denver Field Office, Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security;
PAMELA BONDI, U.S. Attorney General;
JUAN BALTASAR, Warden of Denver Contract Facility, in their official capacities,

      Respondents.

---

**ORDER**

---

Before the Court are the parties' competing status reports regarding Petitioner's bond hearing before an immigration judge (IJ), and Respondents' response to Petitioner's status report. *See* ECF Nos. 12, 13, 16. Though styled as a status report, the Court construes Petitioner's report as a motion to enforce the Court's prior order that ordered Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226, at which "at which the government will bear the burden of demonstrating [to an IJ] by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified," ECF No. 9. *See also Taylor v. Easley*, No. 21–3088–JWL, 2024 WL 1579673, at *1 (D. Kan. Apr. 11, 2024) (construing a status

1

report as motion). Construing the status report in such a manner, *see id.*, and as explained further below, the Court GRANTS Petitioner's request for immediate release.

## I.    BACKGROUND

In granting such relief, the Court presumes familiarity with this case's factual and procedural background, and recites only the portions of this background necessary to resolve Petitioner's instant request for relief.

On April 30, 2026, the Court ordered Respondents to provide Petitioner with a bond hearing: "Respondents shall provide Petitioner with a bond hearing pursuant § 1226 within FIVE DAYS of this order, at which the government will bear the burden of demonstrating to an immigration judge (IJ) by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified." ECF No. 9.

Petitioner received a bond hearing before an IJ on May 8, 2026. *See, e.g.,* ECF No. 12 at 2. Petitioner offered several exhibits in support of release, including a document detailing his mortgage, and numerous letters in support of release. *See, e.g.,* ECF No. 13-3 at 13. At this hearing, the IJ denied Petitioner's request for bond, and ordered Petitioner's "continued detention." ECF No. 16-1 at 5; *id.* at 6. The IJ reasoned that continued detention was warranted because his "limited options to lawfully remain in the United States and the speculative likelihood that relief from removal would be granted substantially increase his flight risk because he has little incentive to appear for future immigration proceedings." *Id.* at 5.

Petitioner filed the instant report on May 13, 2026, contending that his bond hearing did not meaningfully comply with the Court's April 30, 2026, order. *See* ECF No. 13 at 6 ("In sum, while it appears that Respondents did comply in the Court's order by action alone, the underlying compliance with the Court orders is questionable." (citation modified)). Respondents filed a response on May 18, 2026, arguing the May 8, 2026, bond hearing "compl[ied] with this Court's order." ECF No. 16 at 1.

## II.    DISCUSSION

The parties dispute the constitutional sufficiency of Petitioner's bond hearing. The Court agrees this hearing was faulty—and to such a degree that warrants Petitioner's immediate release.

As a preliminary matter, the Court observes that it has the power to ensure its prior order regarding Petitioner's bond hearing was, in Respondents' words, "carried out." ECF No. 16 at 3. Respondents essentially concede that this Court has jurisdiction to review the adequacy of the IJ's bond hearing and the process it provided, *see id.*, and the Court agrees. Numerous courts are in accord. *See also Cahill v. Insider Inc.*, 131 F.4th 933, 938 (9th Cir. 2025) ("[A] district court possesses inherent powers . . . includ[ing] the inherent authority of a court to enforce its orders by whatever means." (citation modified)); *Mejia v. Bondi*, Civil No. 26–1592, 2026 WL 752560, at *2 (D.N.J. Mar. 17, 2026) ("[F]ederal courts retain habeas jurisdiction to ensure that immigration detention comports with the requirements of the Constitution." (citation modified); *Chavarria Mejia v. Crawford*, No. 1:26–cv–253 (LMB/LRV), 2026 WL 819603, at *4 (E.D. Va. Mar. 25, 2026).

3

Next, reviewing the IJ's bond determination for *constitutional* compliance, the Court agrees with Petitioner that this determination is non-compliant. *See* ECF No. 13 at 2. Recall that Petitioner submitted numerous exhibits in support of release. *See generally* ECF No. 13-3. Yet, in finding that continued detention was warranted because "[Petitioner's] release would present an unacceptable flight risk," ECF No. 16-1 at 4, the IJ referenced *only* the birth certificate for Petitioner's daughter, *id.* at 5. And while referencing this exhibit, the IJ's *flight risk* analysis—and the bond determination that attends it—concerned the nature of any future relief that Petitioner could secure through, for example, withholding removal or Convention Against Torture (CAT) protection: "[Petitioner's] limited options to lawfully remain in the United States and the speculative likelihood that relief from removal would be granted substantially increase his flight risk because he has little incentive to appear for future immigration proceedings." *Id.*

Problems plague this analysis and its outcome. First, this order neglects numerous evidentiary submissions provided by Petitioner. *See, e.g.,* ECF No. 13 at 3. Take, for example, the mortgage document, but also:

- the death certificate of Petitioner's wife, ECF No. 13-3 at 11;

- his daughter's birth certificate, *id.* at 12;

- a water usage utility bill, *id.* at 17;

- Petitioner's pay stubs, *id.* at 14, 16; and

- Twenty letters of support from community members, family, and friends, *see id.* at 15–36.

*See also* ECF No. 13 at 4. This is a robust record offered in support of release. Such evidence demonstrates that Petitioner, as noted above, has a mortgage, *see* ECF No.

4

13-3 at 13, and is gainfully employed, *id.* at 14, 16. *See also id.* at 15. Petitioner is his daughter's only surviving parent, as Petitioner's wife died in 2013. *Id.* at 11; *see also id.* at 18 (attesting that Petitioner is a "very good father always taking very good care of his daughter since his wife pass[ed] away"). And the numerous letters of support for Petitioner make clear, in the words of his employer, Abelardo Vega, the owner of QVEST, LLC, that Petitioner is "dependable, honest, [and] not only a valued member of the community but also someone who contributes positively to society," *id.* at 15. *See also* ECF No. 13-2 at 1. Indeed, one of Petitioner's coworkers, represented that Petitioner is "honest, dependable, peaceful," as well as "hardworking, responsible, and trustworthy." ECF No. 13-3 at 19 (citation modified). His daughter represented that Petitioner "respects the law and would never do anything to jeopardize the opportunity to remain with his family," as well as that she had no "doubt that he will attend all his immigration court hearings and follow all court requirements." *Id.* at 20. These representations are in accord with numerous others. *See, e.g., id.* at 30 ("I have much faith in [Petitioner] and know that he can conduct himself as a law abiding member of our community."); *id.* at 34 ("[Petitioner] is also very close to his church community . . . His commitment to his family and his community exemplifies the character of a responsible and caring individual.").

However, a reader of the IJ's bond decision and supporting memorandum would lack awareness of it, given that the IJ's bond memorandum discussed only the daughter's birth certificate. This is error on a constitutional scale. *See, e.g., Guerrero Sanchez v. Sabol*, No. 1:15-CV-2423, 2016 WL 7426129, at *5 (M.D. Pa. Dec. 23, 2016) ("[S]ubmissions by the detainee showing, *inter alia*, reform, rehabilitation, good character,

education, employment history and prospects, familial ties to United States citizens, potential for relief from removal, and any other evidence that contravenes danger to the community or risk of flight *must be considered*, as such evidence is highly relevant to ascertaining the detainee's current risk level." (citation modified). And while, in this case, the IJ did provide some explanation for her bond determination, "[a] bond determination *must be based on a record* produced before the decisionmaker and disclosed to the detainee." *Mejia*, 2026 WL 752560, at *4 (citation modified); *Castillo v. Field Off. Dir. of Enf't & Removal Operations, Miami, Field Off., Immigr. & Customs Enf't*, No. 25–25296–CV, 2025 WL 4689387, at *7 (S.D. Fla. Dec. 19, 2025) ("The Due Process Clause requirement of a full and fair hearing mandates that an IJ *review all relevant evidence*." (citation modified)).

Compounding this error is the IJ's *speculation* as to whether Petitioner could secure relief from removal through other means. *See* ECF No. 16-1 at 5 ("Therefore, the Court finds the speculative nature of being granted future relief from removal to contribute to [Petitioner's] risk of flight." (citation modified)). This is an insufficient basis to deny bond. *See Chavarria Mejia v. Crawford*, 2026 WL 819603, at *5 (concluding an IJ violated "fundamental due process principles" by, among other things, "speculat[ing] as to [the petitioner's] likelihood of success for immigration relief"). Denying bond based on such speculation is wrong, especially where the IJ not only speculated as to the possible outcome of any other immigration proceedings, but made the following—speculative—presumption about Petitioner's future behavior: "[T]he speculative likelihood that relief from removal would be granted substantially increases his flight risk because *he has little*

6

*incentive to appear* for future immigration proceedings." ECF No. 16-1 at 5 (emphasis added).

Simply stated, this is not the "individualized assessment" that the IJ was required to provide Petitioner, nor does such speculative assessment engage the relevant statutory factors—which the IJ recited, *see* ECF No. 16-1 at 4, but obviously failed to discuss in her analysis or meaningfully apply. *See, e.g., D.Y.E.H. v. Warden, et al.*, No. 7:25–CV–201 (WLS–AGH), 2026 WL 1230386, at *5 (M.D. Ga. Apr. 6, 2026) ("The [IJ's] decision treats Petitioner's placement in removal proceedings as creating an inherent incentive to abscond . . . . Further, [the IJ's] speculation as to Petitioner's success on future relief does not support any reasonable inference of flight risk . . . . Taken together, these facts indicate an absence of the individualization required by due process." (citation modified)); *Mejia*, 2026 WL 752560, at *4 (concluding IJ bond determination did not satisfy due process where the IJ's "written order contains no discussion of the evidence presented, no explanation of the reasoning underlying the decision, and no analysis of the relevant custody factors"); *Bayani v. Larose, et al.*, 26–cv–0266–JES–VET, 2026 WL 1270059, at *7 (S.D. Cal. May 8, 2026) (observing "[a]n IJ's role at a bond hearing is to determine whether the government has met its burden to detain . . . not to concoct theories regarding [a petitioner's] motivations" and then concluding that the "IJ thus committed legal error by considering her own speculation, which weighs in favor of finding that she applied the wrong standard at the hearing." (citation modified)). Such error is underscored where record evidence, unmentioned in the IJ's bond memorandum, undermines any notion that Petitioner is a flight risk. *See, e.g., Chavarria Mejia*, 2026 WL

819603, at *5 ("Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed. In short, the link between [the petitioner's] unauthorized employment and any risk of flight is so tenuous that the [IJ's] reliance on that fact deprived [the petitioner] of constitutionally sufficient process." (citation modified)).

In sum: the IJ speculated as to future events. Based on these speculations, the IJ further speculated as to Petitioner's future behavior. Virtually all of the record went unacknowledged in the IJ's bond memorandum and finding that bond denial was warranted. *Cf. Guerrero Sanchez*, 2016 WL 7426129, at *5. Each of these errors, standing alone, presents a constitutional infirmity. The same is true when considering them together. As such, Respondents are wrong to argue the bond memorandum is in "accord with this Court's order" or due process. ECF No. 16 at 4.

The Court notes that, in diagnosing this constitutional infirmity, it does not substitute its own discretionary determination for the one made by the IJ. *Cf. id.* at 3. And the Court rejects Respondents' argument that whether Petitioner has additional remedies available somehow absolves them or the IJ's order of scrutiny as a *constitutional matter*. *See id.* at 6. Instead, the Court is simply determining whether Petitioner received "the procedural protections" he was owed. *Dambreville v. Noem*, No. 4:25–cv–00514–SMR–SBJ, 2026 WL 602174, at *4 (S.D. Iowa Jan. 12, 2026); *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21–1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) (unpublished) ("Although we lack jurisdiction to review any discretionary determinations underlying the

8

IJ's bond decision, we may review whether the bond hearing was fundamentally unfair."); *Bayani*, 2026 WL 1270059, at \*3; *Garcia Ortiz v. Henkey*, No. 1:26–cv–00043–BLW, 2026 WL 948275, at \*4 (D. Idaho Apr. 7, 2026).

Explained above, he wasn't. *See Ghanem,* 2022 WL 574624, at \*2 (observing that one feature of due process and a "fundamentally fair bond hearing" is a petitioner's entitlement to "factfinding *based on a record*" (citation modified)). Accordingly, "it was legal error for the IJ to conclude that [Respondents] had satisfied [their] evidentiary burden" warranting continued detention. *España v. Nessinger*, No. 26–cv–014–JJM–PAS, 2026 WL 821788, at \*13 (D.R.I. Mar. 25, 2026); *Mendez v. Dedos*, No. 1:26–cv–00394–KG–JHR, 2026 WL 973077, at \*2 (D.N.M. Apr. 10, 2026) ("[T]he IJ initially stated that the burden rested with the Government. But the record reflects that the standard was not meaningfully applied." (citation modified)).

\* \* \*

Having concluded Respondents and the IJ failed to comply with the Court's prior order, it must now determine the proper remedy.

Some courts, against similar factual backgrounds, have ordered respondents and IJs to provide habeas petitioners with new individualized, constitutionally adequate bond hearings. *See, e.g., D.Y.E.H.*, 2026 WL 1230386, at \*11; *Bayani*, 2026 WL 1270059, at \*8. Others have ordered immediate release. *See, e.g., Mejia*, 2026 WL 752560, at \*6; *España*, 2026 WL 821788, at \*13 ("Given the due process violations implicated in this case, the Court finds that [the petitioner's] immediate release from detention is the appropriate remedy.").

Petitioner seeks immediate release. *See* ECF No. 13 at 6. Respondents contend that immediate release is an improper remedy. *See* ECF No. 16 at 7. The Court is persuaded that immediate release is proper, considering the underlying constitutional violation and the legal authority cited above. *See, e.g., Mejia*, 2026 WL 752560, at *5 ("In some immigration detention cases, courts remedy a constitutionally deficient bond proceeding by ordering a new hearing. However, habeas corpus is an equitable remedy, and district courts retain broad authority to fashion relief appropriate to the circumstances of the case. Where the detention process has already failed to produce a constitutionally adequate custody determination, courts may order immediate release rather than directing yet another hearing that risks prolonging unlawful detention." (citation modified)); *España*, 2026 WL 821788, at *13 (reaching same conclusion and collecting cases); *Perez Sierra v. Margolin*, No. 25–18829, 2026 WL 800158, at *4 (D.N.J. Mar. 23, 2026); *Mendez*, 2026 WL 973077, at *2.

## III.    CONCLUSION

Consistent with the above analysis, and construing Petitioner's status report as a motion, the Court GRANTS Petitioner's request for immediate release. *See* ECF No. 13 at 6.

It is FURTHER ORDERED that Respondents shall release Petitioner from custody immediately, but no later than within 24 hours of this order, and may not impose any additional conditions of release or supervision beyond those he was subject to immediately prior to his recent detention. Respondents SHALL FILE a status report within THREE DAYS of this Order to certify compliance. Respondents are further ENJOINED

AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, the government shall bear the burden of proof.

DATED this 19th day of May 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge